### In the Interest of A.P., a Minor.

### Appeal of H.P., Mother.

Superior Court of Pennsylvania.

Argued Dec. 9, 1998.

Filed April 9, 1999.

Mitchell A. Sommers, Ephrata, for appellant.

David E. Alspach, Lancaster, Lancaster County Children and Youth Services, participating party.

Before DEL SOLE, STEVENS, and ORIE MELVIN, JJ.

ORIE MELVIN, J.:

¶ 1 Appellant, H.P. (Mother), appeals from the February 23, 1998, order of the Court of Common Pleas of Lancaster County granting the request of the Lancaster County Children and Youth Social Service Agency (CYS) to change its goal regarding the dependent child, A.P. (Child), from reunification with the Mother to adoption. Mother asserts that the trial court erred in authorizing the change in light of CYS's failure to adhere to the requirements of the Americans With Disabilities Act (ADA). For the following reasons we affirm.

¶ 2 In late January, 1997, CYS filed a petition for voluntary custody asking that the Child be found to be a dependent child and placed in its care, custody and control due to the parents' mental health and other problems. The parents agreed with this placement and signed the Family Service Plan, (FSP) dated January 24, 1997, that was attached to the petition. On February 3, 1997, the Court of Common Pleas entered an order granting CYS's request for custody and scheduled a hearing on the petition. On April 4, 1997, CYS filed an amendment to the petition for custody. The amendment alleged that there had been sexual abuse by Mother and requested that the Child be found abused as well as dependent.

¶ 3 On August 18, 1997, after a hearing thereon the trial court entered an order finding Child to be an abused and dependent child and continuing him in the care, custody and control of CYS. That same day the court also issued a dispositional review order continuing the Child in foster care and approving the placement plan amendments for the parents that had been prepared by the Agency. The parents did not appeal from this decision and did not question the appropriateness of the plan as meeting their needs. On February 6, 1998, the trial court entered an order scheduling a hearing on CYS's Petition for Placement Review and Dispositional Review. This mandatory review[1] was held on February 23, 1998, thirteen (13) months after the Child's placement in CYS's custody. After hearing legal argument and testimony from all parties, the trial court granted CYS's request for permanency planning and changed the goal of the plan to adoption. This appeal followed.[2]

¶ 4 The sole issued raised for our consideration is stated as follows:

WHETHER THE AMERICANS WITH DISABILITIES ACT OF 1990 ("ADA") ... [IS] APPLICABLE WHERE A PAR-

---

1. 42 Pa.C.S.A. § 6351(e) provides:

   Within six months of the removal of a child from the home of his parents, ... the court shall conduct a disposition review hearing for the purpose of determining whether placement continues to be best suited to the protection and physical, mental and moral welfare of the child. The court shall conduct a second review hearing not later than six months after the initial hearing, a third hearing not later than six months after the second hearing and subsequent disposition review hearings at least every 12 months until the child is returned home or removed from the jurisdiction of the court.

2. The father did not file an appeal. Consequently we will not consider the propriety of this Order as it relates to the father.

ENT MEETS THE STANDARD OF "OTHERWISE QUALIFIED PERSON UNDER A DISABILITY" UNDER THE ADA AND A PLACEMENT PLAN FAILS TO TAKE INTO ACCOUNT THE PARENT'S DISABILITIES IN PREPARING THE PLAN AND DETERMINING COMPLIANCE WITH THE PLAN?

Appellant's Brief at 5.

¶ 5 An order granting a goal change pursuant to the Juvenile Act, 42 Pa. C.S.A. §§ 6301–6365, is final and appealable. *In Interest of M.B.*, 388 Pa.Super. 381, 565 A.2d 804 (1989), *appeal denied*, 527 Pa. 601, 589 A.2d 692 (1990). Our standard of review in such cases is abuse of discretion. *In Re L.J.*, 456 Pa.Super. 685, 691 A.2d 520 (1997). When reviewing such a decision we are bound by the facts as found by the trial court unless they are not supported in the record. *Id.* Furthermore, in a change of goal proceeding, the trial court must focus on the child and determine the goal in accordance with the child's best interests and not those of his or her parents. *In re J.S.W.*, 438 Pa.Super. 46, 651 A.2d 167 (1994); *In Interest of Z.W.*, 710 A.2d 1176 (Pa.Super.1998).

¶ 6 At each review hearing concerning a child who has been adjudicated dependent and removed from the parental home, the trial court must consider: the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved. 42 Pa.C.S.A. § 6351(f); *In Interest of Z.W.*, 710 A.2d 1176 (Pa.Super.1998).

¶ 7 These statutory mandates clearly place the trial court's focus on the best interests of the child. Instantly, the FSP formulated by CYS and agreed to by the parents, proposed to remedy the causes of placement by requiring Mother to do the following:

1. Live a life free of illegal drug abuse and alcohol misuse;
2. Obtain a drug and alcohol evaluation and follow all recommendations;
3. Demonstrate stable mental health and take prescribed medications;
4. Refrain from violent relationships and obtain counseling services to address issues of domestic violence;
5. Demonstrate knowledge of parenting skills;
6. Obtain a determination from her therapist that she was no longer a sexual danger to her son;
7. Maintain stable income; and
8. Maintain clean and safe housing.

¶ 8 Specifically, the trial court found Mother completed the goals of adequate income and consistent visitation. However, she failed to pursue prescribed out-patient treatment for drug and alcohol abuse, neglected to get appropriate counseling for problems regarding the sexual abuse of her son and the adequacy of her housing was unknown. She also moved several times without notification to CYS making support of the goals virtually impossible despite CYS's reasonable efforts. The court also considered testimony from the Child's therapist outlining his aggressive behavior at school and his expressions of anger towards his mother over the sexual abuse and his desire to commit suicide. We have carefully reviewed the record and conclude the trial court did not abuse its discretion. Accordingly, the change in the permanency goal to adoption was proper.

¶ 9 Interestingly, Mother does not challenge the trial court's determination that the Child should not be returned home due to her failure to comply with the FSP. Instead, Mother now attempts to excuse her noncompliance by arguing that CYS did not formulate the FSP in a manner that would permit her to perform the plan given her mental illness, and therefore, CYS violated the ADA. We find this contention to be both untimely and misplaced.

¶ 10 The application of the ADA in the context of a dispositional review proceeding is a question of first impression in this Court. The ADA generally provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from

participation in or be denied the benefits of the services, programs or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C.A. § 12132. More specifically, the regulations concerning discrimination provide in pertinent part:

A public entity, in providing any aid, benefit, or service, may not, ... on the basis of disability—

(i) Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service;

(ii) Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

(iii) Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others.

28 C.F.R. § 35.130.

¶ 11 Assuming arguendo that Mother falls within the ADA's definition of a "qualified individual with a disability," the relevant inquiry would become whether CYS provided her with reasonable accommodations to allow her to participate and receive the benefits from the services offered on an equal footing with persons who are not disabled. In the context of a disposition review proceeding under 42 Pa.C.S.A. § 6351(e), we find such an inquiry to be untenable. As previously explained the trial court's focus is on the child's best interests. To accept Mother's assertion would require the trial court and this Court to ignore the best interests of the Child and focus instead on the needs of Mother. This we cannot do. *See In re J.S.W.*, 438 Pa.Super. 46, 651 A.2d 167 (1994) (stating "[o]nce a child is adjudicated dependent, the issues of custody and continuation of foster care are determined according to [the] child's best interests."). Since the ADA adds nothing to the trial court's fulfillment of its mandates pursuant to § 6351(f) of the Juvenile Act, we find its application is not properly before this Court for review.

¶ 12 We recognize that an agency must put forth a good faith effort in making services available to a parent. *In re Adoption of J.J.*, 511 Pa. 590, 515 A.2d 883 (1986). To the extent Mother complains that the trial court erred in finding CYS put forth a good faith effort in providing services, such a contention is belied by the record. Moreover, Mother fails to even explain what services were denied or how the services provided were not on an equal footing with nondisabled individuals. A parent, whether disabled or not, must be able to meet the irreducible minimum parental requirements contained in the Juvenile Act for return of a child in CYS's care. If a parent cannot or will not meet her irreducible minimum parental responsibilities, the needs of the child must prevail over the rights of the parent. We do not believe the ADA requires that a disabled parent be offered a plan the parent can meet if such plan would then be insufficient to address the irreducible minimum parental responsibilities.

¶ 13 Congress enacted the ADA to eliminate discrimination and to create causes of action for qualified people who have faced discrimination. *See* 42 U.S.C. § 12101(b). We do not believe Congress intended to change the obligations imposed by unrelated statutes. Mother may have a separate cause of action against CYS pursuant to the ADA; however, such claim does not form a basis upon which to attack an order entered under § 6351(g) of the Juvenile Act. The complex issues associated with a claim of discrimination under the ADA are best resolved by resort to a separate suit in another forum.

¶ 14 We are mindful of the fact that Mother agreed to place her son with CYS in recognition that her disability is the prime reason she is unable to properly raise her son. However, her inability or unwillingness to take the necessary steps to rectify her parental deficiencies cannot also form the basis to overturn the trial court's determination of what is in the best interests of the child. In such a "Catch 22" situation the best interests of the child must take precedence over Mother's interest in parenting.

¶ 15 Furthermore, Mother's ADA claim rings hollow in light of the untimely

manner in which it was raised. We note that at the time this FSP was approved by the trial court's order of August 18, 1997, Mother did not indicate that the FSP was in any way inadequate to address her needs in light of her disability. Nor did she make such a claim at the first six-month review. Only now, after the placement goal was changed to adoption, does she challenge the FSP as violative of the ADA. Under such circumstances we find her claim has been waived. The time for asserting this claim was when the trial court entered its order approving the FSP.

¶ 16 Even if we were to overlook the tardiness of her claim, we would find the record adequately supports a finding that her disability was reasonably accommodated. CYS has provided extensive services to this family. These services include referrals to mental health agencies for counseling, transportation for medical and other appointments, referrals to food banks, and personalized parent-training services. Additionally, prior to placement an intensive unit case worker spent eight to nine hours per week offering in home services such as: crisis management, monitoring of the child's safety and welfare, assertiveness training for the parents, parenting education including meal planning, rewarding the child's good behavior, effective use of consequences for inappropriate behavior, and communication skills. Despite these efforts Mother has not shown progress in her ability to care for her son. In fact prior to this most recent review hearing she stated that she wished to place the Child in long term foster care because she does not feel capable of caring for him due to her mental status and suicide attempts. Accordingly, we are satisfied that additional services would not have cured her denial of sexual abuse or parenting deficiencies so as to enable her to provide a home that meets the essential needs of this child.

¶ 17 Order affirmed.

¶ 18 DEL SOLE, J., filed a Concurring Statement.

DEL SOLE, J., concurring:

¶ 1 I concur in the result reached by the majority. I do not reach any conclusion about the applicability of the American with Disabilities Act (ADA). I believe a decision which subjects substantive state law to modification by federal statutes under the Supremacy Clause should not be made in a vacuum. The issues should be properly framed and adequately addressed in the case and controversy.

¶ 2 In this case, Mother alleges she was denied the services of CYS in formulating a Family Service Plan (FSP) which would permit her to perform the plan due to her mental illness. I first note that CYS did take Mother's mental illness into account when implementing the FSP. As the majority articulates, CYS provided extensive services to this family. Despite Mother's claim to the contrary, CYS does not owe her an FSP she can complete. The best interests of the child are paramount in formulating any FSP and will not be compromised to conform to the abilities and needs of the parents.

¶ 3 Further, I note that Mother made no objection to the FSP at the time it was approved by the court, nor at the time of its six-month review. Additionally, on appeal, Mother has not demonstrated a violation of the ADA, which she must do before we decide if it is applicable to this situation.

¶ 4 Given the state of this record, it would be inappropriate to decide whether the ADA modifies the substantive state law in these circumstances. I note that other jurisdictions, when faced with similar issues, have found the ADA inapplicable to these types of proceedings. *See, In the Interest of Torrance P.*, 187 Wis.2d 10, 522 N.W.2d 243 (Ct.App.1994); *Stone v. Daviess County Div. of Children and Family Servs.*, 656 N.E.2d 824 (Ind.Ct.App.1995) However, I believe that question is best left to another day.