J-S48044-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF: A.M.-F., a/k/a A.M.-F., a Minor Adjudicated Child

IN THE SUPERIOR COURT OF PENNSYLVANIA

APPEAL OF: A.M., Natural Mother

No. 292 WDA 2016

Appeal from the Order entered February 1, 2016,
in the Court of Common Pleas of Erie County,
Domestic Relations, at No.: 64 of 2015

BEFORE:  BOWES, DUBOW and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED AUGUST 16, 2016**

A.M. ("Mother") appeals from the permanency review Order, issued in response to a request by the Erie County Office of Children and Youth ("OCY"), changing the permanency goal for her daughter, A.M.-F. ("Child") (born in October 2014), to adoption, pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6301, *et seq.* ("the Act").  We affirm.

The juvenile court set forth the factual background and procedural history of this appeal in its March 11, 2016 Opinion (regarding Mother), which we incorporate herein.  *See* Juvenile Court Opinion (Mother), 3/11/16, at 1-5. On February 25, 2016, Mother timely filed a Notice of Appeal along with a Concise Statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).  In response, the juvenile court issued a Pa.R.A.P. 1925(a) Opinion.

On appeal, Mother raises the following issues for our review:

1. Did the Juvenile Court commit an abuse of discretion and/or error of law when it determined that the concurrent placement goal of reunification/adoption was no longer feasible[;] dispensed with the concurrent placement goal of reunification, after only ten months[;] and directed [OCY] to provide no further services and[/]or visitation to [Mother]?

2. Did the Juvenile Court commit an abuse of discretion and/or error of law when it failed to acknowledge that [OCY] had failed to conduct an appropriate individualized analysis of the family support services needed by [Mother] and acted solely on its assumptions about [Mother's] disability?

3. Did the Juvenile Court commit an abuse of discretion and/or error of law when it failed to acknowledge that the lack of progress and "minimal compliance" made by [Mother] were the direct result of her disability and that [Mother] should have been offered specialized services by [OCY,] which would have permitted her to demonstrate and/or acquire appropriate parenting skills?

Mother's Brief at 5.[1]

We first note our standard of review:

When we review a [juvenile] court's order to change the placement goal for a dependent child to adoption, our standard is abuse of discretion. In order to conclude that the [juvenile] court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record. We are bound by the [juvenile] court's findings of fact that have support in the record. The [juvenile] court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witnesses and resolving any conflicts in the testimony. In carrying out these responsibilities, the [juvenile] court is free to believe all, part, or none of the evidence. When the [juvenile] court's findings are supported by competent evidence of record, we will affirm even if the record could also support an opposite result.

***In re A.K.***, 936 A.2d 528, 532-33 (Pa. Super. 2007) (citation omitted).

---

[1] Mother stated her issues somewhat differently in her Concise Statement; nevertheless, we find the issues preserved for review.

When considering a petition for goal change for a dependent child under the Act, the juvenile court considers

> the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.

*Id.* at 533 (citing 42 Pa.C.S.A. § 6351(f)). Moreover, "in matters of placement for a dependent child, the [juvenile] court must be guided by the best interests of the child--not those of his or her parents." *In re A.K.*, 936 A.2d at 533.

Additionally, Section 6351(f.1) of the Act requires the juvenile court to make a determination regarding the child's placement goal:

> **(f.1) Additional determination**.— Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:
>
> \* \* \*
>
> (2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

42 Pa.C.S.A. § 6351(f.1)(2). Section 6351(f) sets forth several matters that a juvenile court shall determine at a permanency hearing, including, *inter alia*, "(9) [whether] the child has been in placement for at least 15 of the last 22 months …." *Id.* § 6351(f)(9). Upon finding that the fifteen-month

- 3 -

prerequisite is satisfied, the juvenile court must determine "whether the county agency has filed … a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child …." *Id.*[2]

We will address Mother's issues simultaneously, as they are related. Mother argues that the juvenile court abused its discretion by changing Child's permanency goal to adoption where (1) Child had been in placement for only ten months, which is "far short of the 15[-]month statutory guidepost"; (2) OCY failed to develop and implement a treatment plan tailored to Mother's significant cognitive limitations and special needs; and (3) the juvenile court did not consider the protections that Mother was entitled to under the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. § 12101, *et seq.*, as a disabled person who should have been provided an individualized

---

[2] Our Pennsylvania Supreme Court explained the significance of section 6351(f)(9) as follows: "the statutory language ensures that termination petitions are timely filed. Specifically, if a child has been in custody for 15 of the last 22 months, the court must inquire as to whether a termination petition has been filed, absent the listed exceptions of subsections (i)-(iii), including whether the parents have been provided necessary services." **In re D.C.D.**, 105 A.3d 662, 674 (Pa. 2014); **see also id.** at 674-75 (stating that "[r]equiring a court to inquire whether an agency has filed for termination promotes timely permanency for children rather than subjecting them to foster care drift[,]" *i.e.*, where children languish in the foster care system while their parents unsuccessfully attempt to regain custody). Additionally, our Supreme Court has stated that section 6351(f)(9) does not establish a litmus test that requires a juvenile court to alter the course of reunification due simply to the amount of time a child has been in placement. **In re R.J.T.**, 9 A.3d 1179, 1190 (Pa. 2010).

treatment plan that "might assist her in overcoming her disability." **_See_** Mother's Brief at 8, 9-14.

In its Pa.R.A.P. 1925(a) Opinion, the juvenile court aptly discussed the applicable law in addressing Mother's claims, and determined that (1) her claims did not establish any abuse of discretion; (2) the conditions that led to the placement of Child would not or could not be remedied by Mother, even if OCY were to provide her with further services; and (3) continued, indefinite placement is contrary to Child's best interests. **_See_** Juvenile Court Opinion (Mother), 3/11/16, at 5-8. The juvenile court's reasoning and determination is supported by the law and the record, and we thus affirm on this basis with regard to Mother's issues on appeal. **_See id._** Accordingly, we discern no abuse of discretion by the juvenile court, and affirm its Order changing Child's permanency goal to adoption.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/16/2016

IN THE INTEREST OF: A. M.-F.,   :   IN THE COURT OF COMMON PLEAS
████████████ Z a/k/a   :   OF ERIE COUNTY, PENNSYLVANIA
████████████ ),   :   JUVENILE DIVISION
A minor adjudicated dependent   :   NO. 64 of 2015

## 1925(a) OPINION (APPEAL OF MOTHER)

On January 29, 2016, an order was entered in a dependency case changing the goal to adoption for the child, A.F. The mother of A.F., ████████████, now challenges the order contending this court erred in several respects when it eliminated reunification as a goal.[1] The record supports the finding the change of goal to adoption was established by clear and convincing evidence and is in the best interest of the child. It is therefore requested the Superior Court affirm the order.

## ISSUES PRESENTED

Appellant's primary issue raised on appeal is as follows: that the Juvenile Court committed an abuse of discretion/error of law when it determined the concurrent permanency goal of reunification/adoption was no longer feasible and changed the goal to adoption after the child had only been in care for ten and a half months. Appellant alleges additional time should have been given for her to receive continued treatment and for OCY to comply with various portions of the Americans with Disabilities Act (ADA).

## PROCEDURAL HISTORY AND FACTS

In March 2015, the child was removed from the Appellant's care because of Appellant's significant cognitive limitations that prevented her from parenting the child safely. Specifically, Appellant failed to "demonstrate a basic understanding of the child's needs" and required regular "instruction regarding feedings and hygienic needs for the child." *Court Summary, 7/6/15, p.1.* On March 25, 2015, the child was adjudicated dependent. The Appellant stipulated to the facts

---

[1] Father has also appealed the termination order. That appeal is docketed at 340 WDA 2016. The issues he raised are addressed in a separate opinion.

1

underlying the basis for adjudication. *Court Summary, 7/6/15, p.1.* A dispositional hearing took place on April 22, 2015.

A permanency review hearing followed on July 6, 2015. At the time of this hearing, Appellant was participating in services with Healthy Families of America, the Motherhood Initiative, and a parenting program at her high school. However, she demonstrated minimal understanding of the skills she was learning while visiting with her child. Appellant required regular prompting during visits with her daughter to care for her and interact with her. *Court Summary, 7/6/15, p.6, 7.*

Appellant was also instructed to work with a developmental disabilities coordinator through Erie County Care Management, and, while she did appear to be assessed for services, she did not return to avail herself of those services. At the time of this hearing, Appellant resided with an indicated perpetrator of sexual abuse and had been for some time before the hearing. *Court Summary, 7/6/15, p.6, 7.* At the conclusion of the hearing, the court ordered the child remain in foster care. The goal of reunification remained unchanged. *Permanency Review Order, 7/8/15, p. 2.*

A second review hearing was held on October 21, 2015. The caseworker testified that though the Appellant had been compliant with her treatment, she made only minimal progress in developing parenting skills with Healthy Families of America and the life and parenting skills program at her school. The Appellant was still unable to meet her own needs without the assistance of others. *Permanency Review Hearing Transcript, 10/21/15, p.8-9.*

Workers pointed to Appellant's limited ability to retain information as the cause of her minimal progress. The caseworker stated that though Appellant made an effort at meetings, she still relied heavily on the assistance of agency staff during visitation and continued to require

2

redirection on implementing "basic skills such as feeding and holding techniques." She frequently did not or refused to give the child the proper amount of formula, despite guidance given to help her. It was unclear whether Appellant's inability to feed the child properly was due to an inability to read the formula container. *Permanency Review Hearing Transcript, 10/21/15, p. 32-33.*

The agency worker opined that at no point in the foreseeable future would Appellant be able to successfully and safely parent the child without assistance. *Permanency Review Hearing Transcript, 10/21/15, p.8-9.* Any other programs offered might have benefitted the Appellant for life skills purposes, but would not have benefited her with respect to reunification with her child. *Permanency Review Hearing Transcript, 10/21/15, p.14.*

Appellant continued to live with a perpetrator of sexual abuse. She also failed to follow through with treatment by Erie County Care Management. At the conclusion of the hearing, the court ordered a concurrent goal of adoption be added to the plan. *Permanency Review Hearing Transcript, 10/21/15, p.8; See also Court Summary, 10/21/15, p.5, 6.*

A third review hearing took place on January 25, 2016. All court summaries and attachments were admitted into evidence without objection. OCY requested the goal be changed to adoption.

The testimony of agency case workers showed the Appellant had been receiving services before her child was born through the parenting program at her school and from the Erie Family Center as early as May and October, 2014. A case was not open with OCY at the time these services began, but was opened shortly after the birth of the child based on a referral by the worker at the Erie Family Center. *Permanency Review Hearing Transcript, 1/25/16, p. 7-8.*

3

Both the caseworker from the Erie Family Center and the caseworker from Appellant's school program shared similar concerns regarding Appellant's ability to parent and were often present together at visitation between Appellant and child. *Permanency Review Hearing Transcript, 1/25/16, p.29.* They were primarily concerned with Appellant's ability to remember to feed the baby, feed the baby the proper amount of formula, and remember to pay attention to the child. Services were focused to address those concerns. Appellant once more continued to reside with an indicated perpetrator of abuse. *Permanency Review Hearing Transcript, 1/25/16, p.8, 29.*

Though the caseworkers worked with Appellant for over a year and a half, they testified she made no progress and was in no better position to parent the child in January . Giving her additional time will not change the circumstances. Even when visitation was shortened to thirty minutes due to Appellant's school schedule, Appellant still lost focus and needed constant redirection regarding proper interaction and safety of the child. *Permanency Review Hearing Transcript, 1/25/16, p.12.* She needed frequent instruction on feeding and how to appropriately interact with the infant. She could not remember how to care for the child between visits. This was attributed to Appellant's severe cognitive limitations. According to Appellant's educational records, she has an IQ of 55, and while she made progress with personal life skills through school, still she was unable to independently care for herself and had not progressed at all with regard to her parenting skills. *Permanency Review Hearing Transcript, 1/26/16, p. 33, 37,51.*

Because of the amount of time the child had been in placement, her need for permanency and stability, and Appellant's inability to remedy any of the conditions that led to her placement, the agency's request to change the goal to adoption was granted. A written order was entered

4

January 29, 2016. Services to both parents were terminated. The child was placed in a pre-adoptive home. *Permanency Review Order, 1/29/16, p.2.*

This timely appeal followed.

## STANDARD OF REVIEW

When reviewing an appeal from a decree changing a permanency goal, an appellate court accepts the findings of fact and credibility determinations of the lower court if they are supported by the record. *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). An abuse of discretion standard is used by the appellate court.

An abuse of discretion is not found if the lower court's judgment was reasonable, the court applied the law, and the court's action was not a result of partiality, prejudice, bias, or ill will. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the lower court's decision, the decree must stand. *In re A.K.*, 936 A.2d 528, 533 (Pa.Super. 2007). In a change of goal proceeding, the lower court must focus on the child's best interests, and not the interests of the parents. *Id.* The Agency has the burden of proving the change in goal would be in the child's best interests. *In re M.B.*, 674 A.2d 702, 704 (Pa.Super. 1996).

## DISCUSSION

The Juvenile Act generally requires the Office of Children and Youth ("OCY") to request a goal change when the child has been in placement for fifteen out of twenty-two months. 42 Pa.C.S. §6351 (f)(9). The Appellant primarily asserts the court committed abuse of discretion and/or error of law when it ordered the goal changed to adoption after the child had been in care for ten and one half months and did not require OCY to consider any ADA mandates regarding treatment.

5

There is nothing in the Juvenile Act, case law, or rules of procedure that prevent an agency from requesting a goal change sooner than the prescribed fifteen out of twenty-two month demarcation, nor is there law in Pennsylvania prohibiting the court from ordering the agency to change the permanency goal at any time it is clear reunification is not viable and another permanency goal for the child is more appropriate. For example, the Pennsylvania Superior Court affirmed several lower court orders changing the permanency goal to adoption at the dispositional phase. See *In re D.P.*, 972 A.2d 1221 (Pa.Super. 2009*); In re M.S.*, 980 A.2d 612 (Pa.Super. 2009).

The Superior Court has also held the underlying policy of the Juvenile Act is to curb an inappropriate focus on protecting the rights of the parents when there is a risk of subjecting children to indefinite foster care or returning them to abusive homes. *In re C.B.*, 861 A2d. 287, 295 (Pa.Super. 2004). Moreover, to accept a party's assertion the courts ought to consider the ADA mandates within the purview of the Juvenile Act would "require the trial court" and the Superior Court "to ignore the best interests of the child and focus instead on the needs of the Mother." *In re A.P.*, 728 A.2d 375, 379 (Pa. Super. 1999).

Previously, the Superior Court has shown an unwillingness to shift focus from child to parent. *Id.* The safety, permanency, and the well-being of the child must take precedence over all other considerations, including the rights of the parents. *In re C.B.*, 861 A.2d 287, 295 (Pa. Super. 2004). "Once a child is adjudicated dependent, the issues of custody and continuation of foster care are determined according to the child's best interests." *In re A.P.*, 728 A.2d 375, 379 (Pa. Super. 1999).

Even if the Appellant qualified as an individual with a disability under the ADA, the next relevant question would become whether OCY "provided her with reasonable accommodations

6

to allow her to participate and receive benefits from services offered on an equal footing with persons who are not disabled." *Id.* Not only has OCY provided all the support available to enable Appellant to participate in services with them as any other person would be able to do, the workers also explained other available programs through institutions like the Barber Center would be geared towards helping Appellant develop additional life skills that would not be focused on parent-child bonding or reunification. *Permanency Review Hearing Transcript, 10/21/15, p. 14.* Appellant already participates in school-based life skills training with a focus on parental duties and participates with Healthy Families of America through the Erie Family Center.

Mandating OCY to provide any additional life-skills centered programs to Appellant, especially given her history of failure in similar programs, takes the focus off the child and shifts the focus to the Appellant. In the context of the Juvenile Act, it is improper to change the focus in such a way, and the Superior Court has gone as far as to say it will decline extending the ADA to change obligations imposed by unrelated statutes, and does not believe it was the intent of Congress to do so. *In re A.P.,* 728 A.2d 375, 379 (Pa. Super. 1999). The portion of Appellant's claim that OCY failed to provide her a "true opportunity" to demonstrate appropriate parenting skills or with additional programs or services under the ADA is therefore without merit.

Appellant's contention this court committed abuse of discretion when it changed the goal to adoption after ten and one half months is likewise without merit. It is clear reunification in this case is not possible. Though Appellant loves her child and might make every effort to comply with her treatment plan, it does not change the extent of her cognitive disabilities, nor the fact she has been unable to succeed in successfully parenting because of her permanent cognitive limitations.

7

Caseworkers testified several times Appellant needed to be reminded to give attention to the child, and shown how to properly hold, feed, and change the baby at each visit. Workers were also doubtful a bond had actually been established between Appellant and child. To subject the child to continued placement and deny her the safety and stability she deserves is not in her best interests. Given the Appellant's limited abilities, affording her additional time with services will not change the circumstances. *Permanency Review Hearing Transcript, 1/25/16, p.2.* There is no way to reasonably expect the Appellant will be able to successfully or independently parent the child. It is therefore in the child's best interests the goal be changed to adoption.

## CONCLUSION

Though the Appellant has admittedly put forth effort in order to successfully parent her child, it is clear her cognitive limitations prevent her from doing so. Clear and convincing evidence exists to show that subjecting the child to continued, indefinite placement is contrary to her best interests. Her interests are best served by eliminating reunification as a goal and allowing OCY to proceed to adoption. It is therefore respectfully requested the Superior Court affirm the January 29, 2016 Permanency Review Order.

Dated this ___11th___ day of March, 2016.

BY THE COURT:

_____J.
ROBERT A. SAMBROAK, JR.

cc:   Kevin C. Jennings, Esq. (OCY)
      Patricia Ambrose, Esq. (GAL)
      Charles Sacco, Esq. (Attorney for Mother)
      Elizabeth Brew Walbridge, Esq. (Attorney for Father)

8