J-S79002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF: C.M. AND A.M.,  :    IN THE SUPERIOR COURT OF
MINOR CHILDREN             :        PENNSYLVANIA
                                   :
                                   :
APPEAL OF: M.P.M., FATHER      :      No. 1095 EDA 2016

Appeal from the Order March 3, 2016
In the Court of Common Pleas of Chester County
Orphans' Court at No(s): CP-15-DP-0000052-2013;
CP-15-DP-0000053-2013

BEFORE:  GANTMAN, P.J., MOULTON, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:        **FILED NOVEMBER 15, 2016**

Appellant, M.P.M. ("Father"), appeals from the order entered in the Chester County Court of Common Pleas Orphans' Court, which granted the goal change petition filed by the Chester County Department of Children, Youth and Families ("CYF"), with respect to his minor children, C.M. and A.M. ("Children").  We affirm.

The relevant facts and procedural history of this case are as follows. Father and A.B. ("Mother") are the parents of Children.  After receiving reports of poor living conditions and insufficient parental supervision with respect to Children, CYF filed a dependency petition on June 14, 2013.  The court held a dependency hearing on July 8, 2013, and subsequently adjudicated Children dependent.  As a result, CYF placed Children in foster care.  The court held numerous permanency review hearings between July 2013 and March 2016, which Father often failed to attend due to his

intermittent incarcerated status. At these hearings, the court regularly determined that Father demonstrated minimal or no compliance with his permanency plan. The court also frequently found that Father had made minimal or no progress toward alleviating the circumstances that led to placement. CYF often reported lack of contact with Father.

At a permanency review hearing on December 15, 2015, CYF asked the court to change the permanency plan goal from reunification to adoption. Father did not participate in the hearing due to a malfunction with the video conference equipment. Nevertheless, the court changed the permanency plan goal to adoption at the conclusion of the hearing. On February 9, 2016, CYF filed a petition to terminate Mother's and Father's parental rights to Children. The court held another permanency review hearing on March 3, 2016, where Father asked the court to vacate its December 15, 2015 goal change to adoption. The court granted Father's motion and revisited the goal change issue. After the presentation of testimony by CYF and Father, the court again changed the permanency plan goal from reunification to adoption. On April 1, 2016, Father timely filed a *pro se* notice of appeal, which the court forwarded to counsel. Counsel filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on April 13, 2016.[1]

---

[1] ***See In re K.T.E.L.***, 983 A.2d 745 (Pa.Super. 2009) (explaining in Children's Fast Track cases, appellant's failure to file concise statement contemporaneously with notice of appeal does not divest this Court of

J-S79002-16

Father raises the following issue for our review:

> DID THE TRIAL COURT ABUSE ITS DISCRETION WHEN IT CHANGED THE GOAL FROM REUNIFICATION TO ADOPTION WHEN THE TESTIMONY/EVIDENCE PRESENTED TO THE TRIAL COURT ON MARCH 3, 2016 DID NOT SUPPORT A FINDING BY CLEAR AND CONVINCING EVIDENCE THAT A GOAL CHANGE WAS IN THE BEST INTERESTS OF THE CHILDREN?

(Father's Brief at 4).

On appeal, goal change decisions are subject to an abuse of discretion standard of review. *In re N.C.*, 909 A.2d 818, 822 (Pa.Super. 2006).

> In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record. We are bound by the trial court's findings of fact that have support in the record. The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witness and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence. When the trial court's findings are supported by competent evidence of record, we will affirm, even if the record could also support an opposite result.

*Id.* at 822–23 (internal citations omitted).

The Juvenile Act controls the disposition of dependent children. *In re R.P.*, 957 A.2d 1205, 1217 (Pa.Super. 2008). Section 6351 provides in

---

jurisdiction, but it results in defective notice of appeal to be disposed of on case by case basis; general waiver analysis for failure to file court-ordered Rule 1925(b) statement does not apply in context of noncompliance with Rule 1925(a)(2)(i); allowing concise statement filed shortly after notice of appeal where noncompliance with Rule 1925(a)(2)(i) caused no prejudice to parties).

- 3 -

relevant part:

**§ 6351.  Disposition of dependent child**

\*   \*   \*

**(f)  Matters to be determined at permanency hearing.**—At each permanency hearing, a court shall determine all of the following:

(1)   The continuing necessity for and appropriateness of the placement.

(2)   The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3)   The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4)   The appropriateness and feasibility of the current placement goal for the child.

(5)   The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6)   Whether the child is safe.

\*   \*   \*

(9)   If the child have been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to

adopt the child unless:

(i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;

(ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

(iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

\* \* \*

**(f.1) Additional determination.—**Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:

(1) If and when the child will be returned to the child's parent, guardian or custodian in cases where the return of the child is best suited to the safety, protection and physical, mental and moral welfare of the child.

(2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(3) If and when the child will be placed with a legal custodian in cases where the return to the child's parent, guardian or custodian or being placed for adoption is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(4) If and when the child will be placed with a fit

and willing relative in cases where return to the child's parent, guardian or custodian, being placed for adoption or being placed with a legal custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

\* \* \*

**(f.2) Evidence.—**Evidence of conduct by the parent that places the health, safety or welfare of the child at risk, including evidence of use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk, shall be presented to the court by the county agency or any other party at any disposition or permanency hearing whether or not the conduct was the basis for the determination of dependency.

**(g) Court Order.—**On the basis of the determination made under subsection (f.1), the court shall order the continuation, modification or termination of placement or other disposition which is best suited to the safety, protection and physical, mental and moral welfare of the child.

42 Pa.C.S.A. § 6351(f), (f.1), (f.2), (g).

"When the child welfare agency has made reasonable efforts to return a [dependent] child to his or her biological parent, but those efforts have failed, then the agency must redirect its efforts towards placing the child in an adoptive home." *In re N.C., supra* at 823.

Although the agency has the burden to show a goal change would serve the child's best interests, "[s]afety, permanency, and well-being of the child must take precedence over **all** other considerations" under Section 6351. *In re D.P.*, 972 A.2d 1221, [1230] (Pa.Super. 2009), *appeal denied*, 601 Pa. 702, 973 A.2d 1007 (2009) (emphasis in original); *In re S.B.*, 943 A.2d 973, 978 (Pa.Super. 2008), *appeal denied*, 598 Pa. 782, 959 A.2d 320 (2008). "[T]he parent's rights are secondary" in a goal change proceeding. *In re D.P., supra* [at 1227].

Because the focus is on the child's best interests, a goal change to adoption might be appropriate, even when a parent substantially complies with a reunification plan. *In re N.C., supra* at 826-27. Where a parent's "skills, including her judgment with regard to the emotional well-being of her children, remain problematic[,]" a goal change to adoption might be appropriate, regardless of the parent's compliance with a permanency plan. *Id.* at 825. The agency is not required to offer services indefinitely, where a parent is unable to properly apply the instruction provided. *In re A.L.D.*, 797 A.2d 326, 340 (Pa.Super. 2002). *See also In re S.B., supra* at 981 (giving priority to child's safety and stability, despite parent's substantial compliance with permanency plan); *In re A.P.*, 728 A.2d 375, 379 (Pa.Super. 1999), *appeal denied*, 560 Pa. 693, 743 A.2d 912 (1999) (holding where, despite willingness, parent cannot meet "irreducible minimum parental responsibilities, the needs of the child must prevail over the rights of the parent"). Thus, even where the parent makes earnest efforts, the "court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa.Super. 2006).

*In re R.M.G.*, 997 A.2d 339, 347 (Pa.Super. 2010), *appeal denied*, 608 Pa. 648, 12 A.3d 372 (2010).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Ann Marie Wheatcraft, we conclude Father's issue on appeal merits no relief. The Orphans' court opinion fully discusses and properly disposes of the question presented. (*See* Orphans' Court Opinion, filed May 11, 2016, at 3-6) (finding: Children have been in foster care for almost three years and reunification has been goal for Children since 2013; during this time, neither

Father nor Mother made any measurable progress toward reunification goal; while Father has participated in drug, alcohol, and mental health evaluations, his incarcerated status limits his participation in other services; significantly, Father was immediately re-arrested and incarcerated after his release from custody in 2015; instead of meaningfully participating with CYF to reach reunification goal, Father chose to reoffend; court finds it unlikely that Father will be able to maintain progress he made while incarcerated, when he is ultimately released from custody; Father's release date remains uncertain, and Father's incarceration impacts his ability to parent Children in practical ways; importantly, Father's ability to care for Children after release from custody will not be immediate because Father will be released to halfway house; additionally, Father will have to procure employment and suitable housing before he will be available as resource for Children; Children have already spent too much time in foster care, and evidence presented at March 3, 2016 permanency review hearing demonstrated reunification is not best suited to Children's safety, protection, and physical, mental, and moral welfare; Children's best interest dictates no further exposure to uncertainty of foster care placement in hopes that Father will gain his freedom and be able to care for Children; thus, goal change to adoption was appropriate).  Accordingly, we affirm on the basis of the Orphans' court opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/15/2016

| | |
|---|---|
| **IN THE INTEREST OF:** | : **IN THE COURT OF COMMON PLEAS** |
| | : **CHESTER COUNTY, PENNSYLVANIA** |
| **C.M.,** | : |
| | : **DOCKET NO: CP-15-DP-000052-2013** |
| **A MINOR** | : |
| | : **No. 1095 EDA 2016** |

| | |
|---|---|
| **IN THE INTEREST OF:** | : **IN THE COURT OF COMMON PLEAS** |
| | : **CHESTER COUNTY, PENNSYLVANIA** |
| **A.M.,** | : |
| | : **DOCKET NO: CP-15-DP-000053-2013** |
| **A MINOR** | : |
| | : **No. 1095 EDA 2016** |

J. WHEATCRAFT                                        MAY 11th, 2016

**1925(a) OPINION**

M.P.M. ("Father") ) is the biological father of      C.M. and      A.M.      . Each child was adjudicated dependent on July 8, 2013. Father filed an Appeal from the Orders entered on March 3, 2016 granting the Chester County Department of Children, Youth and Families' ("CYF") request for a goal change from reunification to a new permanent placement goal, adoption.

**PROCEDURAL BACKGROUND**

After two years before a hearing officer, this case was transferred from the hearing officer to this Common Pleas Court Judge at the request of Father in August 2015. A Permanency Review Hearing took place before this jurist on September 17, 2015. Since that time, there have been two Permanency Review Hearings before this Court, December 15, 2015 and March 3, 2016. Father was represented by new

---

[1] Father is not A.M.'s "biological" father, but has accepted paternity of A.M.

counsel[2] at the March 3, 2016, John DiSantis, Esquire. On March 14, 2016, Father filed this present Appeal *pro se*[3].

These children have been involved with CYF continuously since this case was opened on March 7, 2013. At that time, biological mother, A.B. ("Mother"), had full custody of the children due to father's incarceration in February 2013. Prior to Father's incarceration, Father had primary custody of the children and Mother had limited visitation. (CYF Petition, 06/14/13).

In March 2013, Mother reported to CYF that prior to her taking full custody of the children, Father was intoxicated and smoked weed while the children were in his care. Upon further investigation, CYF determined that Mother was facing pending criminal charges and had a possible outstanding warrant. Mother had also recently tested positive for cocaine use. CYF immediately began to provide services to Mother and the children, but the children continued to be in an unsafe environment due to Mother's continuing illegal drug use and her inability to provide the supervision necessary for the safety and welfare of her children. *Id.* On July 8, 2013, the children were adjudicated dependent and placed in foster care.

---

[2] Father had been previously represented by Ira D. Binder, Esquire. Upon Father's request, new counsel was appointed February 23, 2016.

[3] Pursuant to 210 Pa. Code § 65.24, Father's *Pro Se* Appeal was filed and forwarded to Father's attorney, Mr. DiSantis. Mr. DiSantis noted that Father did not file a Statement of Matters Complained of on Appeal ("the Statement") with the *Pro Se* Appeal as required by the Appellate Rules. Mr. DiSantis filed the Statement on Father's behalf on April 13, 2016. Father filed a *pro se* Statement on April 22, 2016. We shall consider the first Statement filed by Mr. DiSantis as counsel of record for Father. (Commonwealth v. Ellis, 626 A.2d 1137 (Pa. 1993), hybrid representation is not permitted on appeal.)). Moreover, Father has not objected to Mr. DiSantis's representation.

## ERRORS ON APPEAL

Father presents four errors.[4] For the purpose of legal analysis and discussion, we construe Father's objection as follows:

1. The court abused its discretion in changing the goal for the children from reunification to adoption when the evidence showed such a determination was not in the best interests of the children and went against the evidence presented, i.e.:

   a. Father made progress and cooperated to the best of his ability with CYF while incarcerated; and

   b. Father was not afforded adequate services.

## SCOPE OF REVIEW

This matter is governed by the Juvenile Act (42 Pa.C.S.A. §6301, *et seq.*). The Superior Court's scope of review is limited to an abuse of discretion standard. The Superior Court is bound by the facts as found by this Court and the determination made unless they are not supported in the record. *In re A.P.*, 728 A.2d 375, 378 (Pa.Super. 1999); *In the Interest of C.J.R.*, 782 A.2d 568, 569–70 (Pa.Super. 2001).

## DISCUSSION

The purpose of the Juvenile Act is to promote permanence for children in the foster care system, and minimize "foster care drift" by expediting permanent placement. It is extremely important to move a child toward a family-based placement such as permanent legal custodianship, kinship care, or open adoptions when reunification is

---

[4] *Id.*

unsuitable. Our main concern is always to prevent dependent children from languishing indefinitely in foster care. C.M. and A.M. have been in foster care for almost three years. In considering a change of goal from reunification to adoption, we focused on what is in the best interests of these children and not the best interests of their Father. The safety, permanency, and well-being of the children take precedence over all other considerations, including Father's parental rights. 42 Pa.C.S.A. § 6351(g); *In re G.P.-R.*, 851 A.2d 967, 973 (Pa.Super. 2004).

The Juvenile Act sets forth certain options available to the courts for the permanent placement of a dependent child: (1) reunification with a biological parent, guardian, or custodian (42 Pa.C.S.A. §6351(f.1)(1)); (2) adoption (42 Pa.C.S.A. §6351(f.1)(2)); (3) legal custodianship in the event neither reunification nor adoption is suited (42 Pa.C.S.A. §6351(f.1)(3)); (4) placement with a fit and willing relative in the event the three previous alternatives are unsuited (42 Pa.C.S.A. §6351(f.1)(4)); or (5) placement in another planned permanent living arrangement when the four previous alternatives are not best suited for the child's safety, protection, and physical, mental and moral welfare. (42 Pa.C.S.A. §6351(f.1)(5)). Before a court may elect an option, it must find that the other options are less suitable.

Reunification has been the goal for these children since March 2013. It is the finding of this Court that there has not been any measurable progress made towards making the goal of reunification attainable. Mother has been non-compliant, and while Father has participated in drug, alcohol, and mental health evaluations, his participation in other services is limited by his incarceration. We find it very telling that in 2015, when Father was released, Father was immediately re-arrested and incarcerated. When given

the opportunity to participate in a meaningful manner with CYF and this court to get his children back, Father chose to re-offend[5]. We have grave reservations that upon being released, a date which remains uncertain, Father will be able to maintain the progress he made while incarcerated. Further, Father's incarceration impacts his ability to take custody of his children in very practical ways. Father's ability to care for his children will not be immediate. Father would be released to a half-way house, have to find employment, and have to procure suitable housing before he is available as a resource for his children. (N.T., 03/03/16, pp. 7, 9-10, 34-39).

C.M. and A.M. have already spent too much time in foster care and any further delay is unacceptable. A goal change from reunification to adoption is in the best interests of these children. We do not make this change lightly, but the history of this case makes it appropriate.

We stress for the benefit of Father, and the Superior Court, that at the conclusion of the March 3, 3016 hearing a concurrent plan remained in place. Father and Mother were both going to keep receiving services. Father is encouraged to continue with any courses available to him during his incarceration, and CYF is to continue to investigate the possibility of kinship placement with Paternal Grandmother or Paternal Aunt.[6] (N.T., 03/03/16, pp. 11-15; p. 25, l. 15-16).

The evidence presented on March 3, 2016 clearly shows that reunification is not best suited to the children's safety, protection, physical, mental, and moral welfare. It is

[5] Father testified that he is challenging the legality of this 2015 arrest. (N.T., 03/03/16, p. 34).
[6] This plan addresses the problem of the children experiencing foster care drift since their initial placement in 2013. Rather than waiting to pursue only one option, reunification, the concurrent plan allows the children to move more quickly through the dependency system and into the permanent placement best suited to their individual situation.

not in the children's best interests to continue to be exposed to uncertainty in their foster care placements in hopes that Father will gain his freedom and be able to care for them some time in the future. The uncertainty of when or if Father will be able to provide for the children is exactly the situation the Juvenile Act is in place to minimize. We continue to find any further delay in a goal change is not in the children's best interests.

## CONCLUSION

The evidence presented supports our finding that a change in the permanency goal is appropriate at this time. For the foregoing reasons, the Court respectfully requests that it's March 3, 2016 Orders be AFFIRMED.

BY THE COURT:

_____
Ann Marie Wheatcraft                    J.