J-S17001-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.A., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 60 WDA 2023 |

Appeal from the Order Entered November 21, 2022
In the Court of Common Pleas of Blair County Juvenile Division at No(s):
CP-07-DP-0000030-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: G.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.A., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 61 WDA 2023 |

Appeal from the Order Entered November 21, 2022
In the Court of Common Pleas of Blair County Juvenile Division at No(s):
CP-07-DP-0000029-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: J. C. A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.A., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 62 WDA 2023 |

Appeal from the Order Entered November 21, 2022
In the Court of Common Pleas of Blair County Juvenile Division at No(s):
CP-07-DP-0000089-2021

BEFORE:  LAZARUS, J., OLSON, J., and KING, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED: JUNE 1, 2023**

A.A. (Mother) appeals from the orders,[1] entered in the Court of Common Pleas of Blair County, changing the permanency goal for her three minor children, D.A. (born Oct. 2018), G.A. (born Jan. 2020), and J.A. (Oct. 2021) (collectively, Children), from reunification to adoption and suspending Mother's visits with Children.[2]  After careful review, we affirm.

D.A. and G.A. were removed from Mother's care on April 27, 2021, pursuant to an emergency protective custody order, as a result of Mother's homelessness.[3]  The court held a shelter care hearing on April 28, 2021, after which D.A. and G.A. were placed in a foster care home and, subsequently, declared dependent on May 7, 2021.  J.A. was later declared dependent on December 21, 2021.  Both Mother and biological Father, B.P.,[4] struggle with

---

[1] Mother has complied with the dictates of ***Commonwealth v. Walker***, 185 A.3d 969 (Pa. 2018), by filing a separate notice of appeal for each trial court docket number.  ***See In re: M.P.***, 204 A.3d 976 (Pa. Super. 2019) (applying ***Walker*** holding in goal change and termination of parental rights matters).

[2] On February 7, 2023, this Court *sua sponte* consolidated these three appeals at Nos. 60, 61 and 62 EDA 2023.  ***See*** Pa.R.A.P. 513.

[3] On April 27, 2021, at approximately 12:08 AM, Blair County Children, Youth and Families (CYF) received a call from Mother stating that she was outside of the Sheetz on Plank Road, was homeless, could not get a hotel room, and was concerned for her Children's safety.  ***See*** N.T. Shelter Care Hearing, 4/27/21, at 2.

[4] Children's Father is not involved in this appeal.

housing instability and mental health issues.[5]  On May 19, 2022, Children were placed in the same foster home, where they continue to reside.

The court held permanency hearings in November 2021, February 2022, June 2022, September 2022, October 2022.  Mother's plan objectives throughout the life of the case included:  (1) obtain appropriate and stable housing; (2) undergo a psychological evaluation; (3) obtain mental health counseling and follow through with recommended treatment; (3) continue with medication management; and (4) participate in domestic violence counseling.  Mother was granted two-hour supervised visits twice a week.  At each permanency hearing, the primary goal was reunification, with a concurrent goal of adoption.  At the permanency hearings, the court found Mother's progress toward alleviating the circumstances necessitating Children's placement was either none or minimal.

On September 6, 2022, CYF filed a "Motion for 11[-]Month Permanency/Dispositional Review Hearing/Goal Change" based on the claim that "return to parent" was no longer a feasible goal, as parents "ha[ve] not made substantial progress towards reunification, [] have not followed through with [psychiatric consultation] recommendations, and their visitation has actually been decreased or suspended as a result of lack of

_____

[5] Mother has been diagnosed with depression, bipolar one depression, manic depression, post-partum depression, adjustment disorder, offensive defiant disorder, borderline personality disorder, and psychosis.  *Id.* at 71.

progress/cooperation."  Motion, 9/6/22, at [4.]  On November 8, 2022, the court held a goal change hearing, at which Mother and Father testified.  At the conclusion of the hearing,[6] the court held the record open for seven days so that Mother could supplement the record with "further documentation regarding [Mother's] lease [and] . . . review everything that has occurred and make a decision in the case."  N.T. Goal Change Hearing, 11/8/21, at 113-14.

By order, on November 21, 2022, the court changed the permanency goal from reunification to adoption and suspended Mother's visitation with Children, concluding that Mother had been "minimally" compliant with her permanency plan and had "minimal" progress toward alleviating the circumstances which necessitated the original placement."  Permanency Order, 11/21/22, at ¶ 4(a); ¶ 7(a).  The court also ordered an alternate goal, of placement with a fit and proper relative, to be explored by CYF.[7]  Children had been in placement for 15 of the last 22 months at the time of the final permanency hearing.

_____

[6] Mary Ann Probst, Esquire, acted as guardian *ad litem* and represented Children's legal interests at the permanency and goal change hearings.

[7] Interestingly, the court recognized that filing a termination petition at that time would **not** serve Children's needs and welfare "in light of the bond that existed between [C]hildren and parents."  **See** Permanency Order, 11/21/22, at ¶ 21(f)(iii).  Thus, the court found "that a reasonable delay exists in not filing a termination petition" and that Children's placement with a "fit and proper" relative shall be ruled out as not appropriate before a petition to terminate parental rights is filed and not before a scheduled January 2023 status conference.  **Id.**

Mother filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. In lieu of a Rule 1925(a) opinion, the trial court relied upon its detailed November 21, 2022 permanency order to support its decision to change the goal to adoption and to suspend Mother's visits. **See** Pa.R.A.P. 1925(a), 1/9/23, at 1-2. On appeal, Mother raises the following issues for our consideration:

(1) Whether the [d]ependency [c]ourt erred/abused its discretion by changing the goal to adoption when the record showed that Mother was making progress toward the goals set by [CYF.]

(2) Whether the [d]ependency [c]ourt erred/abused its discretion by failing to reinstate visitation between [M]other and [C]hildren, as the evidence did not show that Mother was a grave threat to [C]hildren[.]

Appellant's Brief, at 4.

Mother contends that the trial court improperly changed the permanency goal from reunification to adoption "in light of the strong mutual bond she has with [C]hildren []and her apparent parenting skills." **Id.** at 10.

Our standard of review of a goal change is as follows:

When we review a trial court's order to change the placement goal for a dependent child to adoption, our standard is [an] abuse of discretion. In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias[,] or ill will, as shown by the record. The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witnesses and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence. When the trial court's findings

are supported by competent evidence of record, we will affirm
even if the record could also support an opposite result.

*In the Interest of S.G.*, 922 A.2d 943, 946-47 (Pa. Super. 2007) (citations and quotations omitted). *See also In the Interest of R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (appellate court not required to accept trial court's inferences or conclusions of law). We also recognize that in matters of placement for a dependent child, the trial court must be guided by the best interests of the child—not those of his or her parents. *In re N.C.*, 909 A.2d 818, 823 (Pa. Super. 2006).

Mother contends that because she completed a parenting program, the court's concerns with Mother's ability to parent "are overblown" and that "[a]ny and all ChildLine reports [regarding her supervision at] the visits were similarly unfounded." *Id.* at 11. Mother also claims that the day before the November 2022 hearing, she entered into a one-year lease for an apartment, "demonstrating the requested stability [she was required to have with regard to] housing," and that she had "worked diligently [] to pay off a back rent debt that would have prevented her from obtaining housing assistance."[8] Appellant's Brief, at 11-12.

As we have stated, in matters of placement for a dependent child, the trial court must be guided by the best interests *of the child—not those of his or her parents*. *In re N.C.*, *supra*. Instantly, Children were initially removed from Mother due to her homelessness, significant mental health issues, and

_____

[8] Mother testified that Community Action agreed to pay her $900/month rent for one year. *See* N.T. Goal Change Hearing, 11/8/22, at 92.

violence towards others. *See* Permanency Order, 11/21/22, at 6. Since J.A.'s placement, Mother has not had any income. The guardian *ad litem* testified that Mother's "mental health also is just as equal [an issue as her housing instability] in this case" and Mother's failure to obtain the psychiatric and psychological counseling she desperately needs to care for Children creates an "impediment[] to permanency for th[e C]hildren." N.T. Goal Change Hearing, 11/8/22, at 104.

Moreover, Mother has had ongoing criminal issues, including allegedly harassing and threatening a caseworker, as well as existing protection from abuse orders between Mother and Father due to their "on-again-off-again" relationship.[9] *Id.* In addition, CYF caseworkers expressed their concern about Mother's ability to parent at visits, noting that she is unable to control Children's negative behaviors due in part to her inability to read Children's social cues. Caseworkers have also observed Mother frequently lose her temper with Children when they have outbursts. *Id.* at 7. In August 2022, Mother allegedly assaulted a security officer[10] at a medical facility where she

_____

[9] Mother testified at the goal change hearing that there is a pending petition to withdraw Father's and Mother's PFA orders. *See* N.T. Goal Change Hearing, 11/8/22, at 97.

[10] At the time of the adjudicatory/dispositional hearing, held on May 7, 2021, two charges of simple assault, and one count of summary harassment were pending against Mother; Father, B.P., was the alleged victim in the matter. Simple assault, aggravated assault, resisting arrest, disorderly conduct[,] and harassment charges were pending against Mother at the time of the November 2022 hearing as a result of Mother's actions toward the security officer.

was being treated for a wrist sprain she sustained during an altercation with a woman Mother believed was Children's foster mother.

The court also determined as not credible Mother's report to law enforcement that a casework supervisor was stalking and harassing Mother. In fact, when Mother found out she would no longer have visits with Children, Mother, who had to be escorted out of the courthouse because of her behavior, stated that she would be taking matters into her own hands and would be back to "jump" the supervisor. *Id.*

Ultimately, the trial court concluded that "[t]here appears to be no significant progress toward either parent addressing their mental health needs," *id.* at 8, and "that return to parents should no longer be the primary goal as neither [parent] has made substantial progress toward reunification." *Id.* *See* 42 Pa.C.S.A. § 6301(f)(3), (5.1), (6), (9). The court did not find Mother's testimony that she had completed Women Aware mental health training was credible where a KidsFirst employee reported Mother still had two remaining classes left in the program. The court also concluded that Mother's belief that any type of trauma therapy was "unnecessary" was just a veiled attempt to "avoid addressing past trauma [that ultimately] is not serving her mental health well." Permanency Order, 11/21/22, at 7.

The court's findings that Mother downplayed her mental health issues, and is unable to address the stress in her life, as well as her general mindset toward receiving mental health treatment, supports its decision to change the permanency goal to adoption. *See In Interest of R.J.T.*, *supra* at 1190

(appellate court must defer to trial judges who see and hear parties and can determine credibility to be placed on each witness and gauge likelihood of success of current permanency plan, even if appellate court would have made different conclusion based on cold record). ***See also In re A.P***., 728 A.2d 375, 379 (Pa. Super. 1999) (holding where, despite willingness, parent cannot meet "irreducible minimum parental responsibilities, the needs of the child must prevail over the rights of the parent"); ***In re Adoption of R.J.S.***, 901 A.2d 502, 513 (Pa. Super. 2006) (even where parent makes earnest efforts, "court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future"). Therefore, we conclude that the trial court did not abuse its discretion in changing the goal from reunification to adoption where the decision is in Children's best interests. ***In the Interest of S.G.***, ***supra***.

Next, Mother contends that the court's decision to suspend visitation is not supported in the record where she does not pose a "grave threat" to Children. Mother misapprehends the appropriate standard regarding visitation and, thus, her claim is meritless.

In a dependency case,

> [t]he standard against which visitation is measured . . . depends upon the goal mandated in the family service plan. Where . . . reunification still remains the goal of the family service plan, visitation will not be denied or reduced unless it poses a grave threat. **If . . . the goal is no longer reunification of the family, then visitation may be limited or denied if it is in the best interests of the child or children.**

*In re B.G.*, 774 A.2d 757, 760 (Pa. Super. 2001) (*quoting In Re C.J.*, 729 A.2d 89, 95 (Pa. Super. 1999)) (emphasis added).

With regard to suspending Mother's visits with Children, the court found that "Mother has significant mental health issues that have been unaddressed throughout this dependency proceeding. Unless [] Mother immediate[ly] pursues trauma therapy[,] visitation is not in the children's best interest." Permanency Order, 11/21/23, at 6; *id.* at 7 (Children continue to act out at visits and "[Mother does not] appear able to control their behaviors"); *id.* (Mother lacks ability to read Children's cues at visits "to address their needs in an appropriate manner, which appears to compound the behavioral outbursts [C]hildren experience during their visits"); *id.* (ChildLine reported Mother for losing temper with Children at visits). Because the court changed the goal to adoption, its decision to suspend visits due to the fact that visits with Mother, who still exhibited significant mental health issues, were not in Children's best interest is legally proper. *In re B.G.*, *supra*. Moreover, having determined that record evidence supports the court's conclusion that Mother still suffers from anger issues, mental health issues, and is unable to adequately address Children's needs in an appropriate manner during visits, we find that it was in Children's best interests to suspend Mother's visits with Children.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/1/2023</u>