J-S53001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: Z. B .B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: B. B., FATHER | No. 680 EDA 2017 |

Appeal from the Order Entered January 20, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):
CP-51-AP-0001292-2016
CP-51-DP-0002242-2014

BEFORE: BENDER, P.J.E., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:          **FILED OCTOBER 11, 2017**

B.B. ("Father") appeals from the January 20, 2017 order that granted the petition filed by the Philadelphia Department of Human Services (DHS) to involuntarily terminate his parental rights to Z.B.B. ("Child") (born in June of 2007) and change the goal for Child to adoption. We affirm.

In its opinion, the trial court set forth the factual and procedural history of this case, as follows:

> On May 5, 2010, Child's family became known to the Department of Human Services ("DHS") when the Honorable Holly Ford granted [M.S.] ("Aunt"), maternal aunt of Child, sole legal custody of Child's sibling. On July 16, 2014, the Honorable Holly Ford granted sole legal custody of Child to Aunt. Child's parents D.S. ("Mother") and Father were not involved with the care of Child at that time. Their whereabouts were unknown to DHS at that time. On October 3, 2014, the Honorable Jonathan Irvine adjudicated Child dependent and physical custody was granted to caretaker Aunt. On February 19, 2015, DHS obtained an Order for Protective Custody ("OPC") for Child as a result of inappropriate discipline by caretaker Aunt. Mother and Father were not viable resources as each parent was minimally involved with the needs of Child. Thereafter, Child was sent to a foster home.

Child is autistic and receives services from Therapeutic Staff Support ("TSS") and the Community Organization for Mental Health and Rehabilitation ("COMHAR"). A permanency review hearing was held on June 14, 2016, before the Honorable Jonathan Irvine and Father was ordered to go to the Achieving Reunification Center ("ARC") for anger management and parenting classes. On September 1, 2016, a permanency review hearing was held before this Court and Father was ordered again to go to ARC for anger management and parenting classes.

Throughout the history of this case, [the Community Umbrella Agency ("CUA")] recommended Single Case Plan ("SCP") objectives for Father. Father's final SCP objectives were (1) to learn and understand Child's autism; (2) to participate in supervised visits; (3) to complete anger management and parenting counseling; (4) to demonstrate appropriate parenting skills and (5) to meet the Child's mental health and behavioral needs. Before meeting these objectives, Father was the alleged perpetrator of child abuse arising from an incident at the Father's home during an unsupervised visit. According to testimony, he was accused of chok[ing] the Child.

On or about December 28, 2016, DHS filed the underlying Petition to Terminate Father's Parental Rights to Child. On January 19, 2017, this Court terminated Father's parental rights to Child pursuant to 23 Pa.C.S.[] § 2511(a)(1)(2)(5) and (8). The Court also ruled the termination of the Father's parental rights was in the best interest of the Child pursuant to 23 Pa.C.S.[] § 2511(b). The Court ruled that the Child's goal be changed to adoption. Thereafter, Father filed a Notice of Appeal on February 21, 2017.

Trial Court Opinion (TCO), 4/6/17, at 2-4 (citations to the record omitted).

Following its rendition of the facts and procedural history, quoted above, the trial court discussed the basis for its decision to involuntarily terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b). Specifically, the court noted "Father's ongoing unwillingness to provide care or control for [] Child; to perform any parental

duties and a failure to remedy the conditions that brought the Child into care." *Id.* at 4. The court also discussed the CUA representative's testimony, which it found credible, stating:

> At the hearing, the CUA Representative testified that throughout his life, Child had never lived with Father. The CUA Representative also testified that Child had autism which required extensive treatment and required intensive parental involvement. The CUA Representative testified that Father knew his SCP objectives. Father's SCP objectives were to obtain appropriate housing[,] to comply with all visitation with Child, and to attend Child's medical appointments. The CUA Representative testified that over time additional SCP objectives were included, which were parenting classes and anger management classes. The CUA Representative testified that parenting classes and anger management classes were included as SCP objectives because Father inappropriately disciplined the Child by choking the Child and slamming the Child on a bed in May 2016. The CUA Representative testified that Father had not completed anger management classes. The CUA Representative testified that Father could not visit the Child from May to October 2016 because Father did not provide CUA with a work schedule.
>
> Testimony indicated that Father had not met Child's medical needs due to Father not attending medical appointments. The CUA Representative testified that the Child's pre-adoptive foster parents were able to meet Child's needs. The CUA Representative further testified that it would be in Child's best interest to be adopted. The CUA Representative further testified that termination of Father's parental rights would not harm Child and that termination of Father's parental rights would be in the Child's best interest

*Id.* at 5-6 (citations to the record omitted). Thus, the court found that DHS had carried its burden of proof and that the termination would best serve Child's needs and welfare.

On appeal, Father raises the following issues for our review:

1.    Did the trial court abuse its discretion by granting [DHS']
Petition to Change the Goal to Adoption pursuant to the Juvenile
Act[,] 42 Pa.C.S.[] § 6301[,] because it did not view the …
"totality of the circumstances?"

2.    Did the trial court abuse its discretion by finding that DHS
proved by clear and convincing evidence that Father failed to
rehabilitate himself pursuant to 23 Pa.C.S.[] [§]
2511(a)(1)(2)(5)(8)?

3.    Did the trial court abuse its discretion by finding that DHS
proved by clear and convincing evidence that it was in the best
interests of [Child] to be adopted pursuant to 23 Pa.C.S.[] [§]
2511(b)?

Father's brief at 4.[1]

We initially address Father's second and third issues, which involve the

termination of his parental rights to Child.   We review such an order

terminating parental rights in accordance with the following standard:

When reviewing an appeal from a decree terminating
parental rights, we are limited to determining whether the
decision of the trial court is supported by competent evidence.
Absent an abuse of discretion, an error of law, or insufficient
evidentiary support for the trial court's decision, the decree
must stand.   Where a trial court has granted a petition to
involuntarily terminate parental rights, this Court must accord
the hearing judge's decision the same deference that we would
give to a jury verdict.  We must employ a broad, comprehensive
review of the record in order to determine whether the trial
court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (quoting *In re S.H.*, 879

A.2d 802, 805 (Pa. Super. 2005)).  Moreover, we have explained that:

_____

[1] In its opinion, the trial court did not address the change of goal to
adoption.

- 4 -

The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)). The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003).

We are guided further by the following: Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511, other citations omitted). The burden is upon the petitioner to prove by clear

- 5 -

and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. **R.N.J.**, 985 A.2d at 276.

With regard to Section 2511(b), we direct our analysis to the facts relating to that section. This Court has explained that:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In **In re C.M.S.**, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. **Id.** However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. **In re K.Z.S.**, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. **Id.** at 763.

**In re Adoption of J.M.**, 991 A.2d 321, 324 (Pa. Super. 2010).

In this case, as noted above, the trial court terminated Father's parental rights pursuant to sections 2511(a)(1), (2), (5), (8) and (b). We need only agree with the trial court as to any one subsection of section 2511(a), as well as section 2511(b), in order to affirm. **In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Although Father's second issue discusses all the subsections that the court determined were applicable, *i.e.*, subsections (a)(1), (2), (5) and (8), we choose to analyze the court's decision to terminate under section 2511(a)(1) and (b), which provide:

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> (1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

> \*\*\*

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

In ***In re Z.P.***, 994 A.2d 1108 (Pa. Super. 2010), this Court provided direction relating to what considerations need to be addressed when reviewing a trial court's decision to terminate parental rights under various subsections of 2511(a).  Specifically, relating to subsection (a)(1), the ***Z.P.*** Court stated:

> A court may terminate parental rights under Section 2511(a)(1) where the parent demonstrates a settled purpose to relinquish parental claim to a child **or** fails to perform parental duties for at least the six months prior to the filing of the termination petition. ***In re C.S.,*** [761 A.2d 1197 (Pa. Super. 2000)].  The court should consider the entire background of the case and not simply:

- 7 -

> mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his … parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

> *In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied,* 582 Pa. 718, 872 A.2d 1200 (2005) (citing *In re D.J.S.*, 737 A.2d 283 (Pa. Super. 1999)).

*In re Z.P.*, 994 A.2d at 1117 (emphasis in original).

Father's argument relating to section 2511(a)(1) centers on his assertion that the evidence did not support a finding that he had "exhibited a 'settled purpose' to abandon his [C]hild[]" or that he "failed to take affirmative action to rectify the problems that brought the [C]hild into care." Father's brief at 17. Specifically, Father contends that he visited with Child, took "advantage of the limited services that were offered to him by CUA[,]" that he appeared at all hearings, except for two, had completed a parenting class, "complied with all the unsupervised visits[,]" and "attended two therapeutic sessions with Child." *Id.* at 16. Father also asserts that he attended "anger management classes that were available to him prior to ARC closing his case." *Id.*

DHS counters Father's arguments by noting that Father did not participate in the case until the June 15, 2015 permanency hearing, around the time Child was eight years old. Father's visitation with Child at the outset was supervised, but after December of 2015, the visits became

- 8 -

unsupervised. However, in June of 2016, Father's initial goals were modified to include anger management counseling and parenting classes as a result of Father's inappropriate discipline of Child. Following that incident, the unsupervised visitation was changed to supervised, but then all visitation was suspended until Child's therapist recommended reinstatement. In fact, after that time Father had no contact with Child or the CUA representative. Moreover, because Father waited almost six months, until shortly before the termination petition was filed in December of 2016, to begin the anger management counseling, he was unable to complete that goal due to his own failure to enroll in the program. Father also did not take part in Child's therapeutic services (only attending two sessions) or make any effort to understand Child's autism or to participate in any training regarding Child's condition. Additionally, Father acknowledged that he lacked the ability to care for and meet Child's daily needs. DHS also points out that Father was aware of his SCP objectives and was informed that he needed to complete his objectives to avoid termination and facilitate reunification.

Thus, based on its findings and credibility determinations, the court concluded that Father refused or failed to perform his parental duties for a period of at least six months prior to the filing of the petition to terminate his parental rights. After our thorough review, we determine that the record supports the trial court's conclusion and it did not abuse its discretion in so holding. Therefore, Father is not entitled to relief.

We next turn to Father's issue in which he claims that insufficient evidence established that termination would best serve Child's needs and welfare pursuant to 23 Pa.C.S. § 2511(b). Specifically, Father claims that DHS failed to prove that "no bond [existed] between Father and Child and that no irreparable harm would result from permanently servering the relationship." Father's brief at 20. Surprisingly, Father cites testimony from Mr. Jacques, the CUA case worker, who indicated that a bond existed between Child and his current caregivers, that Child would be harmed if removed from current caregivers, who understood how to meet Child's special needs, and that Child showed no signs of harm during the seven month separation from Father after the May 2016 incident.

To counter this testimony, Father contends that because the court restricted contact between him and Child, the best interest analysis was affected and essentially promoted the bond with the foster parents. However, Father has failed to point to evidence in the record that would support a finding of a bond between Father and Child in light of the fact that he was not present for much of Child's life and that he did not put forth the necessary effort to become involved, when given the opportunity. This is especially so in light of Child's autism and mental health issues. Again, we conclude that the trial court did not abuse its discretion in that no evidence supported a finding that severing any possible ties between Father and Child

will have a negative effect on Child or that Child will suffer irreparable harm. Father is not entitled to relief.

We now turn to Father's initial issue relating to his assertion that the court abused its discretion in changing the placement goal to adoption when it failed to view the totality of the circumstances of the case. To address the goal change issue raised in this matter, we are guided by the following:

> In cases involving a court's order changing the placement goal … to adoption, our standard of review is abuse of discretion. **In re N.C.**, 909 A.2d 818, 822 (Pa. Super. 2006). To hold that the trial court abused its discretion, we must determine its judgment was "manifestly unreasonable," that the court disregarded the law, or that its action was "a result of partiality, prejudice, bias or ill will." **Id.** (quoting **In re G.P.-R.**, 851 A.2d 967, 973 (Pa. Super. 2004)). While this Court is bound by the facts determined in the trial court, we are not tied to the court's inferences, deductions and conclusions; we have a "responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record." **In re A.K.**, 906 A.2d 596, 599 (Pa. Super. 2006). Therefore, our scope of review is broad. **Id.**

**In re S.B.**, 943 A.2d 973, 977 (Pa. Super. 2008). Additionally, this Court has provided further considerations that apply in goal change situations, stating:

> Because the focus is on the child's best interests, a goal change to adoption might be appropriate, even when a parent substantially complies with a reunification plan. **In re N.C.**, **supra** 826-27 [(Pa. Super. 2006)]. Where a parent's "skills, including [his or] her judgment with regard to the emotional well-being of her children, remain problematic[,]" a goal change to adoption might be appropriate, regardless of the parent's compliance with a permanency plan. **Id.** at 825. The agency is not required to offer services indefinitely, where a parent is unable to properly apply the instruction provided. **In re A.L.D.**, 797 A.2d 326, 340 (Pa. Super. 2002). **See also In re S.B.**,

- 11 -

> *supra* at 981 (giving priority to child's safety and stability, despite parent's substantial compliance with permanency plan); *In re A.P.*, 728 A.2d 375, 379 (Pa. Super. 1999), *appeal denied*, 560 Pa. 693, 743 A.2d 912 (1999) (holding where, despite willingness, parent cannot meet "irreducible minimum parental responsibilities, the needs of the child must prevail over the rights of the parent"). Thus, even where the parent makes earnest efforts, the "court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

*In re R.M.G.*, 997 A.2d 339, 347 (Pa. Super. 2010).

Relating to the goal change issue, Father argues that the court should have denied DHS's request for a goal change because there was a "lack of appropriate services offered to Father and because the services that were offered were offered too late (11/16/16) for him to complete, *i.e.*, two month[s] prior to the termination of parental rights trial (1/19/17)." Father's brief at 12. Father also contends that at the outset he was only assigned three goals and that the other two goals were only added in June of 2016. Furthermore, Father asserts that the CUA representative acknowledged "that Father had complied with 'some' of the family plan goals that were assigned in the beginning of the case." *Id.* Additionally, the CUA representative testified that because Child's therapist did not approve reinstatement of Father's visits with Child after the abuse incident, visits could not be rescheduled. With regard to the two added goals, *i.e.*, anger management and mental health, Father suggests that the fault lay with ARC for failure to schedule the anger management sessions in a timely manner,

thus, limiting his attendance to only two sessions before his parental rights were terminated. Father also claims that he could not attend the ARC mental health program because at the time he did not have insurance. Lastly, Father asserts that in light of Child's autism and mental health issues, which were a barrier to reunification, it was the CUA's failure to provide the proper referral to programs that would have aided Father in his understanding of Child's condition and that, as a result, the abuse incident would never have occurred.

In response, DHS points out that Father's arguments alleging a lack of reasonable efforts have been waived because during the proceedings before the trial court Father never contested the court's findings that DHS had made reasonable efforts. DHS also asserts that Father's Rule 1925(b) Statement of Errors Complained of on Appeal does not contain a claim of a lack of reasonable efforts on the part of DHS. Moreover, DHS further claims that Father has not identified where in the record this issue was preserved for appellate review. However, despite DHS's waiver arguments, it addresses Father's goal change arguments, contending that they are meritless. Specifically, DHS identifies the fact that although Father was directed to participate in Child's medical and mental health appointments, he only attended two sessions. Therefore, DHS claims that due to this failure, Father was ineligible to receive training to aid in addressing Child's needs. In other words, it was not DHS's failure to provide services, but rather it was

Father's choice not to take advantage of the services offered, a choice which he cannot blame on others. DHS also identifies Father's failure to follow up on a referral for an anger management program, which was made an objective in June of 2016. Rather, he waited to enroll and again blames others for only being able to attend two sessions, one in December of 2016 and the other in January of 2017, shortly before the court ordered the termination of his parental rights. In concluding its position on the goal change to adoption issue, DHS states:

> The evidence established that [Father] failed to comply with the permanency plan to attain reunification with [Child] and lacked the capacity to ensure [Child's] safety, stability and well-being. [Child's] significant mental health, educational, and behavioral needs require a caregiver who is knowledgeable about autism and an active participant in all of [Child's] services. [Father] did not display an understanding or appreciation for [Child's] behavioral and mental health needs. This was evident by [Father's] non-compliance with the court's order to attend all of [Child's] treatment services, which were expansive, including weekly therapy through Elwyn, one-on-one in home services, psychiatric services, autism support services and trauma therapy through Hall Mercer.

DHS's brief at 22 (citations to the record omitted).

Having reviewed the extensive record in this case, we conclude that the court's change of goal to adoption was not an abuse of discretion, nor manifestly unreasonable. The facts discussed by the parties and the trial court in connection with the termination determination support the goal change to adoption.

Accordingly, we affirm the trial court's order terminating Father's parental rights to Child and changing the goal for Child to adoption.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/11/2017